IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| Robert Lee Pickrell, III, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15cv657 (CMH/MSN) |
| | ) | |
| Hampton Roads Regional Jail, et al., | ) | |
| Defendants. | ) | |

<u>MEMORANDUM OPINION</u>

Robert Lee Pickrell, III, a former Virginia inmate proceeding <u>pro se</u>, has filed a civil

rights action, pursuant to 42 U.S.C. § 1983, alleging that the defendants, officials at Hampton

Roads Regional Jail ("Hampton Roads"), have violated shown deliberate indifference to his

serious medical needs; have unlawfully detained him past the expiration of his prison sentence;

and have interfered with his ability to receive mail. Plaintiff has applied to proceed <u>in forma</u>

<u>pauperis</u> in this action. Because plaintiff has recently been released from custody, he will be

directed to submit a new application to proceed <u>in forma pauperis</u>. After reviewing plaintiff's

complaint, the claims against defendants Hampton Roads, the City of Portsmouth, Naphcare,

Jones, and Poe will be dismissed with prejudice, pursuant to 28 U.S.C. § 1915A(b)(1), for failure

to state a claim.[1] Additionally, for the reasons stated below, this complaint does not conform to

---

[1] Section 1915A provides:

(a) **Screening.**—The court shall review, before docketing, if feasible or, in any
event, as soon as practicable after docketing, a complaint in a civil action in which
a prisoner seeks redress from a governmental entity or officer or employee of a
governmental entity.

(b) **Grounds for dismissal.**—On review, the court shall identify cognizable
claims or dismiss the complaint, or any portion of the complaint, if the
complaint—

(1) is frivolous, malicious, or fails to state a claim upon which
relief can be granted; or

all requirements for § 1983 civil actions, and plaintiff will be directed to provide additional information regarding all remaining defendants.

## I.

Plaintiff makes numerous allegations against officials at Hampton Roads. He was confined at Hampton Roads as a pretrial detainee between September 23, 2014 and January 14, 2015, when he was sentenced and confined as a prisoner. See Compl. "Statement of the Claim" ¶ 3(c). First, he alleges that, on January 30, 2015 and February 2, 2015, Officer Hall read plaintiff's legal mail outside his presence. See id. ¶ 1. Plaintiff states that Hampton Roads "has a procedure in place that should have ensured [his right to lawyer-client confidentiality], but that [Hall] took it upon his self [sic] to deliberately ignore policy and procedure to open and read the plaintiff's legal mail outside the plaintiff's presence." Id. ¶ 10(a). Plaintiff states that Hall opened and read three pieces of legal mail outside of his presence but in the presence of another officer and his cellmate. Id. Hall allegedly admitted to plaintiff that he violated policy and read plaintiff's mail, and "shrugged his shoulders that he didn't care" about violating policy. Id. ¶ 10(b).[2]

Plaintiff also states that defendants Jones and Poe, officials in the Hampton Roads Records Department, falsely held him for nine months past the conclusion of his original sentence. He states that "Ms. Jones was made full aware [sic] by the plaintiff that his time was wrong and was held under [sic] a false 9 months sentence that held the plaintiff unlawfully to

---

(2) seeks monetary relief from a defendant who is immune from such relief.

[2] Plaintiff also appears to allege that Hall violated his Fourth Amendment rights by this action. See id. To the extent that he attempts to assert a Fourth Amendment claim, he has failed to state a claim, as it is well-established that inmates have no right in the contents of their prison cells. Hudson v. Palmer, 468 U.S. 517, 526 (1984).

post bond on another charge being a pre-trial detainee on other charges pending in Portsmouth [sic] where the bond was set." Id. ¶ 8(a). This allegation appears to relate to a sentence rendered in Norfolk Circuit Court that was "really a 3 month sentence originally." Id. ¶ 8(b). He states that, even though these officials knew that his records were incorrect, he had to "prove and show his self [sic] that there [sic] records were wrong and held him unlawfully detained . . . ." Id. ¶ 8(a). He filed numerous grievances and complaints regarding the errors in his records, but states that "it wasn't til [sic] around January 4, 2015 or around that date a week or so prior till [sic] the plaintiff's trial and sentence when the false 9 month sentence was corrected . . . ." Id. ¶ 8(c). He states that Poe had full awareness of the falsity of his records and of Jones' actions. See id. ¶¶ 9(a)-9(d).

The crux of plaintiff's complaint is that he received inadequate medical care at Hampton Roads. He arrived on September 23, 2014 from the Norfolk City Jail for medical reasons. Norfolk City Jail sent plaintiff to Hampton Roads so that he could be provided with prosthetic arch supports and "corrective shoes," which were not available at Norfolk City Jail. Id. ¶¶ 3(c); 12(a). When he arrived at Hampton Roads, he had severe pain and had difficulty walking, and was told that he would be "seen immediately for chronic care and given pain medication and put in for special dietary tray as well, which none of this ever happen [sic] . . . ." Id. ¶ 3(c); see also id.¶ 12(a). Plaintiff states that, between his arrival and February 13, 2015, Graves refused to provide him with pain medication. Id. ¶ 12(e).

Plaintiff was not issued crutches until November 29, 2014, allegedly due to defendant Graves lying and entering incorrect information into the medical database. See id. ¶¶ 2(c); 12(a)-12(b). On February 10, 2015, Dr. Colanga provided plaintiff with a cane, after he complained "over and over [that] the crutches made him worse and his arms were rubbing raw and feet,

ankles, knees, and thighs were worse [sic]." Id. For the next two months, plaintiff was unable to walk at all, and was forced to "slid[e] on the floor." Id. Because of his pain, he was allegedly unable to go to the cafeteria and was only able to shower twice in a month and a half period. Id. ¶ 15(d).[3] Although a physical therapist apparently advised medical staff to provide him with a wheelchair and he requested one on numerous occasions, he was not provided one until April 3, 2015. Id. ¶¶ 2(c); 4(b); 15(e). During this period, medical staff told him that he would be re-evaluated for crutches or a wheelchair, but an emergency nurse apparently told plaintiff that, during this time, his request had never been entered in the system. Id. ¶ 4(b).

During the time that plaintiff was on crutches, he remained on the top bunk in his cell, until he "finally fell and split his head open and hurt his hip and wrist and may have suffered a concussion . . . ." Id. ¶ 4(c). When he visited medical after his fall, the nurse told him that none of the medical staff had ordered him to be re-evaluated for crutches or a wheelchair. Id. ¶ 12(g). After this incident, plaintiff states that he was placed in a "boat on the floor[,] which is on the floor in a two man cell and next to the toilet as well as unsanitary . . . ." Id. ¶ 4(e).

Plaintiff also appears to be alleging an equal protection violation, as he states that he was denied "feasable excess [sic] to the same rights as all other inmates" due to his injuries. Id. ¶ 15(d). In several of his grievances, plaintiff – who is white – alleged that, although he was not receiving adequate medical treatment, black inmates were receiving adequate medical treatment. See, e.g., Compl. Att., at ECF page 23 [Dkt. 6-2].

## II.

In reviewing a complaint pursuant to § 1915A, a court must dismiss a prisoner complaint that is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1). Whether a complaint states a claim upon which relief can be granted is

determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."

Sumner v. Tucker, 9 F. Supp. 2d 641, 642 (E.D. Va. 1998).  To survive a 12(b)(6) motion, and

thus state a claim under § 1915A(b)(1), "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556

U.S. at 663.  Although the facts should be construed in plaintiff's favor, Edwards v. City of

Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999), "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice" to meet this standard, Iqbal,

556 U.S. at 678, and a plaintiff's "[f]actual allegations must be enough to raise a right to relief

above the speculative level . . . ."  Twombly, 550 U.S. at 55.  Moreover, a court "is not bound to

accept as true a legal conclusion couched as a factual allegation."  Iqbal, 556 U.S. at 678.

### III.

As plaintiff was a pretrial detainee for the beginning of his detention, some of his claims

are governed by the Due Process Clause of the Fourteenth Amendment.  See Bell v. Wolfish,

441 U.S. 520, 535-36 (1979).  It is well-established, however, that the Due Process rights of a

pretrial detainee are at least as great as the Eighth Amendment protections available to a

convicted prisoner.  See Salde v. Hampton Roads Regional Jail, 407 F.3d 243, 250 (4th Cir.

2005).  Therefore, all of plaintiff's claims will be discussed in relation to the Eighth Amendment

standard.

### A.  Claims Against Non-Persons

The claims against Hampton Roads, the City of Portsmouth, and NaphCare must be dismissed.  Section 1983 provides a cause of action for constitutional violations committed by a "person, [acting] under color of any statute, ordinance, regulation, custom, or usage, of any State . . . ."  42 U.S.C. § 1983.  Hampton Roads and NaphCare are not "persons" for purposes of § 1983 liability, and thus cannot be defendants in this action.  Cities such as Portsmouth can be held liable as "persons" if the "action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision [that has been] officially adopted and promulgated by that body's officers."  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).  Plaintiff has not alleged that the complained-of actions are the result of any unconstitutional custom or policy of the City of Portsmouth.  Accordingly, the City of Portsmouth is also not a proper defendant in this action.

Plaintiff has alleged that the City of Portsmouth and Hampton Roads should be liable for their failure to train officials at Hampton Roads.  However, a supervisory employer is generally only liable for a failure to properly train subordinates "where the failure to train amounts to deliberate indifference to the rights of person with whom the [employee] come[s] into contact."  City of Canton v. Harris, 489 U.S. 378, 388 (1989).  Plaintiff's conclusory allegations that Hampton Roads and Portsmouth have failed to properly train employees are insufficient to state a claim.  Accordingly, the claims against Hampton Roads, the City of Portsmouth, and NaphCare will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim.

### B. Unlawful Imprisonment

Plaintiff's claim that defendants Jones and Poe unlawfully detained him for nine months is not properly before the Court in a § 1983 action.  Where, as here, a claim attacks the fact or

6

duration of confinement, the appropriate remedy is a writ of habeas corpus, not a claim under 42 U.S.C. § 1983. See generally Wilkinson v. Dotson, 544 U.S. 74, 78-82 (2005) (summarizing the distinctions between § 1983 and habeas actions); Preiser v. Rodriguez, 411 U.S. 475, 487 (1973). Anytime a plaintiff requests relief that would automatically shorten the duration of his confinement, "either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the lawfulness of the State's custody," he must file a petition for habeas corpus, rather than an action under § 1983. Wilkinson, 544 U.S. at 81. A federal court cannot grant § 1983 relief if granting such relief would necessarily shorten the duration of plaintiff's confinement or determine the legal validity of the confinement. Id. at 82. Because determining the validity of plaintiff's claim of unlawful imprisonment would necessarily require the Court to determine the lawfulness of plaintiff's confinement, his claim must be filed as a petition for habeas corpus, pursuant to 28 U.S.C. § 2254.

## IV.

As plaintiff was a pretrial detainee for the beginning of his detention, some of his claims are governed by the Due Process Clause of the Fourteenth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535-36 (1979). It is well-established, however, that the Due Process rights of a pretrial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner. See Salde v. Hampton Roads Regional Jail, 407 F.3d 243, 250 (4th Cir. 2005). Therefore, all of plaintiff's claims will be discussed in relation to the Eighth Amendment standard.

Plaintiff's remaining allegations appear to be that: (1) medical staff denied him adequate medical care; (2) medical staff violated his right to Equal Protection; and (3) defendant Hall violated his First Amendment rights to receive legal mail. Although district courts have a duty to

construe pleadings by pro se litigants liberally, pro se plaintiffs must nevertheless allege a cause of action. Bracey v. Buchanan, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999). To state a cause of action under § 1983, a plaintiff must allege facts indicating that he was deprived of rights guaranteed by the Constitution or laws of the United States, and that this deprivation resulted from conduct committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988). Thus, each named defendant must have had personal knowledge of and personal involvement in the alleged violations of plaintiff's constitutional rights for the action to proceed against him. As presented, plaintiff has not yet stated a claim against any of the remaining defendants, but because plaintiff is proceeding pro se, he will be granted an opportunity to particularize and amend his complaint.

### A. Supervisory Liability

Plaintiff specifically alleges that defendants David Simmons, Chief of Security, Captain Cowan, and Sergeant Brown are liable as supervisors for their failure to adequately train their subordinates. To the extent that plaintiff is attempting to hold these individuals liable for their failure to train, he has not met the standard stated in City of Canton, 489 U.S. 388, allowing liability for a failure to train only when such a failure amounts to deliberate indifference. To the extent that plaintiff wishes to hold these defendants liable in their general capacity as supervisors, he has also failed to state a claim. Supervisory officials can be held liable for constitutional injuries inflicted by their subordinates only in certain circumstance. See Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (citing Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984)). This liability is premised on the "recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict

on those committed to their care." Id. at 798 (quoting Slakan, 737 F.2d at 372-73). Therefore, to

establish supervisory liability under § 1983, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate
> was engaged in conduct that posed "a pervasive and unreasonable risk" of
> constitutional injury to citizens like the plaintiff; (2) that the supervisor's response
> to that knowledge was so inadequate as to show "deliberate indifference to or tacit
> authorization of the alleged offensive practices,"; and (3) that there was an
> "affirmative causal link" between the supervisor's inaction and the particular
> constitutional injury suffered by the plaintiff.

Id. at 799 (internal citations omitted).

As presented, plaintiff has not stated a claim against any of the above supervisors, under

either theory. Although he alleges that the defendants knew of his inadequate medical care, he

has not provided sufficient facts to show an "affirmative causal link" between the defendants'

actions and the allegedly unconstitutional conditions. Similarly, although he alleges that

Simmons, specifically, failed to adequately train his employees, he has not presented specific

facts showing that this failure to train amounted to deliberate indifference. Accordingly, he is

directed to provide additional facts to show that these defendants may be held liable as

supervisors.

### B. Personal Involvement

Plaintiff has not made any specific allegations against nurses Bynum, McArtor, or Wgna.

All of these individuals responded to plaintiff's emergency grievances, however. Therefore, it

appears that he is attempting to hold these individuals liable on that basis. However, the

allegation that these individuals responded to plaintiff's grievances, standing alone, is

insufficient to render them personally liable for the alleged violation of plaintiff's rights. See

Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (finding that defendant was not sufficiently

personally involved in an allegedly unconstitutional adjustment team hearing when he received a

letter from plaintiff about the hearing, but was not actually present at the hearing itself); see also Alder v. Corr. Med. Servs., 73 F. App'x. 839, 841 (6th Cir. 2003) ("The mere denial of a prisoner's grievance states no claim of constitutional dimension."). Accordingly, these nurses can only be liable to plaintiff if they played a *specific* role in the denial of his constitutional rights. Plaintiff is directed to provide specific facts showing that these individuals had personal involvement in his inadequate medical care.

## C. Denial of Medical Care

Plaintiff alleges that nurse Graves and Dr. Colanga were deliberately indifferent to his serious medical needs. To state a claim of deliberate indifference to serious medical needs, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 105 (1976); see also Staples v. Va. Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995). Thus, a plaintiff must satisfy two distinct elements to show that he is entitled to relief. First, he must provide evidence to show that he suffered from a sufficiently serious medical need. A medical need is "serious" if it has been diagnosed by a physician as mandating medical treatment, or if a lay person would recognize the need for medical treatment. See Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)); see also Cooper v. Dyke, 814 F.2d 941, 945-46 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Brown v. District of Columbia, 514 F.3d 1279, 1284 (D.C. Cir. 2008) (concluding that the "intense and often relentless pain" associated with untreated gallstones is sufficiently serious); but see Hall v. Holsmith, 340 F. App'x. 944, 947 & n.3 (4th Cir. 2009) (holding that flu-like symptoms did not constitute a serious medical need).

Second, a plaintiff must allege that the defendant acted with deliberate indifference to his

serious medical need. To act with deliberate indifference, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). An assertion of mere negligence or malpractice is not enough to state a constitutional violation; instead, plaintiff must allege and demonstrate "[d]eliberate indifference . . . by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), overruled in part by Farmer, 511 U.S. 825; see also Estelle, 429 U.S. at 106. In other words, a plaintiff must show that defendant's actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier, 896 F.2d at 851 (citations omitted). To act with deliberate indifference, a defendant must have actual knowledge of the potential risk of harm to an inmate; the mere fact that the defendant should have known of the risk is not sufficient to constitute deliberate indifference. See, e.g., Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001); Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard – a showing of mere negligence will not meet it.").

A delay in medical treatment may also constitute deliberate indifference. See Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009) (citing Estelle, 429 U.S. at 104-05). A constitutional violation only occurs, however, if the delay results in some "substantial harm" to the patient. Thus, in addition to alleging that the medical need was objectively serious, the plaintiff must also show that the delay in the provision of medical care resulted in an objectively "substantial harm" in order to establish an Eighth Amendment violation. See Webb v. Hamidullah, 281 Fed. App'x. 159, 166 (4th Cir. 2008); Shabazz v. Prison Health Servs., No. 3:10cv190, 2011 WL 2489661, at *6 (E.D. Va. Aug. 9, 2011). "The substantial harm requirement may be satisfied by lifelong

handicap, permanent loss, or considerable pain." Garret v. Stratman, 254 F.3d 946, 950 (10th Cir. 2001); see also Webb, 281 Fed. App'x at 167 (substantial harm may be evidenced by an "marked increase in hernia[] size, frequent complaints of severe pain, or signs that [] hernia was becoming non-reducible").

Based on the foregoing principles, plaintiff has failed to state a claim for deliberate indifference. Assuming without deciding that his foot pain and dietary restrictions constitute serious medical needs, he has failed to show that either defendant acted with deliberate indifference to these needs. Specifically, although he has alleged that he was unable to walk for two months, he has admitted that he was provided with crutches and then a wheelchair. Although he may not have been satisfied with the speed at which he was provided with these devices, such a disagreement does not constitute deliberate indifference. See Wright, 766 F.2d at 849. Plaintiff has made only conclusory allegations that the delay in obtaining a wheelchair caused his foot pain to get worse. In deference to his pro se status, he is directed to provide more information about why the delay in obtaining his wheelchair caused him substantial harm. In addition, he is directed to provide more information about what specific medical condition he suffers from, and what specific involvement defendants Graves and Colanga had in treating this condition.

### D. Equal Protection

Plaintiff appears to allege that, by failing to provide him with proper medical treatment, the defendants have treated him differently than other inmates by denying him the ability to shower and go to the cafeteria. He also appears to allege that the defendants have treated him differently because of his race. The Equal Protection Clause protects against arbitrary classifications by state actors and ensures that all similarly situated individuals will be treated in

the same way. U.S. Const. amend. XIV.  To succeed on an equal protection claim, a plaintiff

must show that (1) he was treated differently from others (2) who were similarly situated and (3)

that this unequal treatment was the result of intentional or purposeful discrimination.  See Plyer

v. Doe, 457 U.S. 202 (1982); Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).  If

plaintiff is not a member of a suspect class, a court considering such a claim must also inquire

"whether the [challenged] classification serves a legitimate state interest and whether the

challenged classification is rationally related to it."  Khaliq v. Angelone, 72 F. App'x 895, 901

(4th Cir. 2003) (citing Moss v. Clark, 886 F.2d 686, 690 (4th Cir. 1989)).  As prisoners are not a

suspect class, see, e.g., Waters v. Bass, 304 F. Supp. 2d 802, 810 (E.D. Va. 2004) (Ellis, J.)

(internal citations omitted), plaintiff must show that his particular classification serves no

legitimate state interest.  Plaintiff has not met his burden of showing that he has been treated

differently than other similarly situated individuals.  In deference to his pro se status, he is

directed to particularize and amend his complaint.

### E. Access to the Courts

Plaintiff also alleges that defendant Hall has opened his legal mail outside of his

presence.  Plaintiff appears to allege that this violates his right to attorney-client confidentiality.

Thus, he appears to allege that defendant Hall has interfered with his ability to access the courts.

It is well-settled that inmates have a right to meaningful access to the courts, which requires that

individuals acting under color of state law cannot hinder an inmate in his efforts to pursue a legal

claim.  Bounds v. Smith, 430 U.S. 817, 822 (1977)); Lewis v. Casey, 518 U.S. 343 (1996); see

also Hause v. Vaught, 993 F.2d 1079, 1084 (4th Cir. 1993).  To state a claim for denial of access

to the courts, plaintiff must establish that he suffered an "actual injury or specific harm."  Hause,

993 F.2d at 1084–85; see, e.g., Strickler v. Waters, 989 F.2d 1375, 1382 (4th Cir. 1993); Magee

v. Waters, 810 F.2d 451, 452–53 (4th Cir. 1987). To make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996); see also White v. White, 886 F.2d 721, 723–24 (4th Cir. 1989). Actual injury requires the inmate to "demonstrate that his nonfrivolous, post-conviction or civil rights legal claim has been frustrated or impeded." Jackson v. Wiley, 352 F. Supp. 2d 666, 679–80 (E.D. Va. 2004).

Plaintiff has provided only conclusory allegations that defendant Hall has violated his attorney-client privilege. He has not identified whether he is pursuing a specific legal case, or what specific injury he has suffered as a result of Hall's actions. In deference to his pro se status, he is directed to particularize and amend his complaint.

### F. Exhaustion

Lastly, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford v. Ngo, 548 U.S. 81, 92 (2006) (requiring complete exhaustion of correctional facility administrative remedies). In order to bring this action in the federal courts, plaintiff must receive a response to his grievance and, if unsatisfactory, must pursue it through all available levels of appeal before presenting that claim in federal court. At this time it is unclear whether plaintiff completely exhausted his institution's administrative remedies on all of his claims. Before this action may proceed, plaintiff will be required to submit additional information concerning his exhaustion of administrative remedies. See Anderson v. XYZ Corr. Health

Servs., Inc., 407 F.3d 674, 680 (4th Cir. 2005) (deeming improper sua sponte dismissal of a

claim on exhaustion grounds).

V.

For the foregoing reasons, the claims against Hampton Roads, the City of Portsmouth,

NaphCare, Jones, and Poe will be dismissed.  Plaintiff is directed to particularize and amend his

complaint in regards to the remaining defendants.  An appropriate Order will issue.


Entered this _____ day of _____ 2015.




United States District Judge

Alexandria, Virginia